Mark F. James (5295)
   mjames@hjdlaw.com
Mitchell A. Stephens (11775)
   mstephens@hjdlaw.com
HATCH, JAMES & DODGE , P.C.
10 West Broadway, Suite 400
Salt Lake City, UT 84101
Telephone:  (801) 363-6363
Facsimile:   (801) 363-6666

**Attorneys for Plaintiff and the Proposed Class**

---

### IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| Ryan Draayer, Individually and On Behalf of All Others Similarly Situated,<br><br><br>Plaintiffs,<br><br>v.<br><br>ZAGG INCORPORATED, RANDALL HALES, ROBERT. G. PEDERSON, BRANDON T. O'BRIEN, EDWARD D. EKSTROM, SHUICHIRO UEYAMA, and CHERYL. A. LARABEE<br><br><br>Defendants. | **CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS**<br><br>Judge Dee Benson<br><br>Case No. 2:12-cv-00859-DB<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ryan Draayer, individually and on behalf of all other persons similarly situated,

by his undersigned attorneys, for his complaint against Defendants, alleges the following based

upon personal knowledge as to himself and his own acts, and information and belief as to all

other matters, based upon, inter alia, the investigation conducted by and through his attorneys,

1

which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Zagg, Inc. ("Zagg" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of ZAGG between February 28, 2012 and August 17, 2012 (the "Class Period"), inclusive, seeking to recover damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Zagg develops, manufactures, and sells branded protective coverings, audio accessories and power solutions for consumer electronic and hand-held devices.

3.      The company's shareholders were unaware that a "margin call situation" involving Robert G. Pederson ("Pederson"), the Company's founder and Chief Executive Officer ("CEO") began in December 2011. Pederson borrowed substantial amounts of monies, putting up his Zagg shares as collateral.  Although Defendant Pederson ultimately resigned his post as the company's CEO due to the "margin call situation," investors were not informed that Defendant Pederson had pledged Company stock until after his resignation over eight months later.

4.     On December 21, 2011, Defendant Pedersen sold approximately $2.6 million worth of Zagg stock. At the time, shareholders were only informed that Pedersen sold the stock to "meet an immediate financial obligation." In reality, the December stock sale was made to meet a margin call. Also undisclosed to investors was Pederson's posting of more than a million additional shares as collateral that were subject to margin calls. Realizing that Pederson had recklessly put his position as CEO at risk at the expense of investors, the Company began a succession plan beginning in December 2011 to remove Pederson as CEO, and to appoint Defendant Hales as his successor. This succession plan was also purposefully hid from investors.

5.   Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendant Pederson had placed more than 50% of his Zagg ownership as collateral on margin, jeopardizing his future with the Company; (ii) as a result of Pederson's reckless actions, the Company began a secret succession plan to replace him with Defendant Hales as CEO; and (iii) as a result of the above, the Company's financial statements were materially false and misleading at an· relevant times.

6.     Moreover, on April 27, 2012, the Company filed a definitive proxy statement on a Schedule 14A (the "Proxy"). The Proxy contained the unanimous recommendation of the Company board of directors (the "Board") that Zagg shareholders vote in favor of, *inter alia,* the reelection of all five of the Company directors, including Defendant Pedersen. However, despite the Board's knowledge of Defendant Pedersen's stock pledges, the Board authorized the filing of

the Proxy without including any reference to Defendant Pedersen's use of Company stock as collateral. The omission of this information rendered the Proxy materially false and misleading.

7.     Following the Board's recommendation to vote in favor of all directors, Defendant Pedersen was reelected to a new term as a Company director.

8.      On August 17, 2012, the Company disclosed that Defendant Pedersen had "stepped down as CEO and Chairman," effective immediately. It was later disclosed that Defendant Pedersen had resigned after selling 515,000 shares of Zagg common stock on August 14, 2012, at prices ranging between $8.10 and $8.43, to meet margin calls. In a conference call held on August 28, 2012, the Company revealed that Pederson had sold an additional 1.2 million shares of Zagg stock to meet margin requirements, and due to "the margin call situation", the Company hired Defendant Hales as its President and Chief Operating Officer in December 2011, and that Hale had been responsible for "much of the day today responsibilities" of the Company well before Pederson's resignation.

9. Immediately following the Company's August 17, 2012 announcement, Zagg stock declined $1.12 per share or over 13%, to close at $7.30 per share on August 20, 2012.

10.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b), 14(a) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b), 78n(a) and 78t(a)), and Rules 10b-5 and 14a-9 promulgated thereunder (17 C.P.R. § 240.10b-5, 17 C.P.R. § 240.14a-9).

12.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

13.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.     Plaintiff, as set forth in the attached Certification, acquired Zagg securities at artificially inflated prices during the Class Period and has been damaged thereby.

16.     Defendant Zagg is a Nevada corporation with principal executive offices located at 3855 South 500 West, Suite J, Salt Lake City, UT 84115. Zagg's common stock trades on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "ZAGG."

17.     Defendant Brandon T. O'Brien ("O'Brien") was, at all relevant times, the Company's Chief Financial Officer.

18.     Defendant Randall Hales ("Hales") was, at all relevant times, the Company's President, Chief Operating Officer and a director. On August 20, 2012, Hales was appointed as the Company's Interim Chief Executive Officer.

19.     Defendant Pedersen was the Company's Chairman of the Board and CEO from 2006 through August 20,2012. Defendant Pederson was the co-founder of the Company.

20.     Defendant Edward D. Ekstrom ("Ekstrom") was, at all relevant times, a director.

21.     Defendant Shuichiro Ueyama ("Ueyama") was a director from 2009 through July 9, 2012.

22.     Defendant Cheryl A. Larabee ("Larabee") was, at all relevant times, a director.

23.     The Defendants referenced above in ¶¶17 - 19 are sometimes referred to herein as the "Individual Defendants."

24.     The Defendants referenced above in ¶¶18- 22 are sometimes referred to herein as the "Director Defendants."

25.     During the Class Period, each of the Individual and Director Defendants, as senior executive officers, agents, and/or directors of Zagg and its subsidiaries and affiliates, was privy to nonpublic information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information

6

provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

26.     Because of the Individual and Director Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.

27.     It is appropriate to treat the Individual and Director Defendants as a group for pleading purposes and to presume that the disclosure of the false, misleading, and incomplete information conveyed in the Company's public filings, press releases, and other publications as alleged herein is the result of collective actions of the narrowly defined group of Defendants identified above. Each of the above officers and directors of Zagg and its subsidiaries and affiliates, by virtue of his position with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said Defendants were involved in drafting, producing, reviewing and/or disseminating the false

and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

28.     As officers, directors, and controlling persons of a publicly-held company whose securities were and are registered with the SEC pursuant to the Exchange Act, and that were traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual and Director Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual and Director Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

29.     The Individual and Director Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Zagg, each of the Individual and Director Defendants had access to the adverse undisclosed information about Zagg's financial condition and performance as

particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Zagg and its business issued or adopted by the Company materially false and misleading.

30.     The Individual and Director Defendants, because of their positions of control and authority as officers, directors, agents, and/or controlling persons of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual and Director Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or to cause them to be corrected. Accordingly, each of the Individual and Director Defendants is responsible for the accuracy of the public reports and press releases detailed herein and is therefore primarily liable for the representations contained therein.

31.     Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Zagg securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme (i) deceived the investing public regarding Zagg's business, operations, management and the intrinsic value of Zagg stock; and (ii) caused Plaintiff and other members of the Class to purchase Zagg securities at artificially inflated prices.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

32.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the

common stock of Zagg during the Class Period and who were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Zagg's common stock was actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least hundreds of members in the proposed Class.  Members of the Class may be identified from records maintained by Zagg or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

34.     Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35.      Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

36.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

10

b.      whether statements made by Defendants to the investing public during the

Class Period misrepresented material facts about the business, operations and

management of Zagg; and

c.      to what extent the members of the Class have sustained damages, and the

proper measure of damages.

37.     A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to redress

individually the wrongs done to them.  There will be no difficulty in the management of this

action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

38.     Zagg develops, manufactures, and sells protective coverings, audio accessories

and power solutions for consumer electronic and hand-held devices.  It offers various products

under the brand names invisibleSHIELD®, ZAGGskins™, ZAGGbuds™, ZAGGsparq™,

ZAGGmate™, ZAGGfolio™, ZAGGkeys™, iFrogz™ and Earpollution™. The Company's

leading product, the invisibleSHIELD, is made from a protective film covering that was

originally developed to protect the blades of U.S. military helicopters. The Company determined

that this same film product could be configured to fit onto the surface of electronic devices and

marketed to consumers for use in protecting such devices from every day wear and tear,

11

including scratches, scrapes, debris and other surface blemishes. The film also permits touch sensitivity, meaning it can be used on devices that have a touch-screen interface. The invisibleSHIELD film material is highly reliable and durable because it was originally developed for use in a high friction, high velocity context within the aerospace industry.

### Defendant Pedersen Pledges Company Stock

39.     Prior to the start of the Class Period, Defendant Pedersen pledged more than two million shares of Zagg stock on margin as collateral, which represented more than 50% of his stake in the Company.  At no point during the Class Period were shareholders informed that Pedersen had pledged such a substantial amount of shares as collateral on margin,.

40.     On December 23, 2011, Defendant Petersen filed a Form 4 with the SEC disclosing that he had sold approximately $2.6 million worth of Company stock two days prior. According to the Form 4, Petersen sold the stock on December 21 to "meet an immediate financial obligation." In truth, the December 21 stock sale was made to meet a margin call, which represented only a fraction of the amount of Pederson's shares which were exposed to similar forced divestitures.

### The Proxy Failed to Disclose Material Information that the Board was Required to Disclose

41.     On April 27, 2012, the Company filed the Proxy with the SEC. The Proxy sought shareholder action on a number of items at the 2012 annual shareholder meeting, including whether or not (i) to elect five directors of the Company, including Pedersen, to serve until the next annual meeting of the stockholders and until a successor has been elected and qualified; and (ii) to confirm the appointment of KPMG LLP, as the Company's independent registered public

accounting firm for the fiscal year ending December 31, 2012.

42.     Item 403(b) of Regulation S-K requires disclosure of the number of shares pledged as security by named executive officers, directors and director nominees in proxy statements.[1]

43.     The SEC has explained that "[t]o the extent that shares beneficially owned by named executive officers, directors and director nominees are used as collateral, these shares may be subject to material risk or contingencies that do not apply to other shares beneficially owned by these persons. These circumstances have the potential to influence management's performance and decisions. As a result, we believe that the existence of these securities pledges could be material to shareholders."[2]

44.     However, despite actual knowledge of Defendant Pedersen's pledges of Company stock, the Board failed to disclose the existence of any Company shares pledged as collateral by Defendant Pedersen, much less the number of shares pledged.

45.     Information regarding stock pledges by Pedersen and the scope of such pledges were material to shareholders who were considering whether to elect a slate of directors that included Defendant Pedersen. Furthermore, this information was material to shareholders because they were unaware that the Board had already acted to remove Pederson due to his indiscretions. Absent disclosure of the pertinent details of Pedersen's stock pledges, shareholders had no opportunity to evaluate the impact of these stock pledges on the functioning of the Board.

---

1 *See* 17 C.F.R. § 229.403.
2 *See* http://www.sec.gov/rules/final/2006/33-8732a.pdf

**Materially False and Misleading Statements Issued During the Class Period**

46.     On February 27, 2012, after the market closed, Zagg issued a press release announcing its financial and operating results for the quarter and year ended December 31, 2011. For the quarter, the Company reported net income of $9.6 million, or $0.32 diluted earnings per share ("EPS") and net sales of $67.5 million, as compared to net income of $3.4 million or $0.13 diluted EPS and net sales of $29 million for the same period a year ago. For the year, the Company reported net income of $17.6 million, or $0.63 diluted EPS and net sales of $179million, as compared to net income of $9.9 million, or $0.41 diluted EPS and net sales of $76 million for the same period a year ago.

47.     On March 15, 2012, the Company filed an annual report for the period ended December 31, 2011 on Form 10-K with the SEC, which was signed by, among others, Defendants Pedersen and O'Brien, and reiterated the Company's previously announced annual financial results and financial position. In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Pedersen and O'Brien, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

48.     On May 3, 2012, Zagg issued a press release announcing its financial and operating results for the quarter ended March 31, 2012. For the quarter, the Company reported net income of $5.1 million, or $0.16 diluted EPS and net sales of $55.5 million, as compared to net income of $3.3 million, or $0.13 diluted EPS and net sales of $27 million for the same period a year ago.

49.     On May 10, 2012, the Company filed a quarterly report for the period ended March 31, 2012 on Form 10-Q with the SEC, which was signed by Defendants Pedersen and O'Brien, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Pedersen and O'Brien, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

50.     On August 2, 2012, Zagg issued a press release announcing its financial and operating results for the quarter ended June 30, 2012. For the quarter, the Company reported net income of $5.8 million, or $0.18 diluted EPS and net sales of $61.6 million, as compared to net income of $2.6 million, or $0.10 diluted EPS and revenue of $38.8 million for the same period a year ago.

51.     On this news, Zagg shares declined $2.39 per share or more than 22%, to close at $8.31 per share on August 3, 2012.

52.     On August 8, 2012, the Company filed a quarterly report for the period ended June 30, 2012 on Form 10-Q with the SEC, which was signed by Defendants Pedersen and O'Brien, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Pedersen and O'Brien, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

15

53.     The statements referenced in ¶¶ 46-50, 52 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them, including that: (i) Defendant Pederson had placed more than 50% of his Zagg ownership as collateral on margin, jeopardizing his future with the Company; (ii) as a result of Pederson's reckless actions, the Company began a secret succession plan to replace him with Defendant Hales; and (iii) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

**Truth Slowly Materializes Damaging Investors**

54.     On Friday, August 17, 2012, after the market closed, the Company disclosed in a press release that Defendant Pedersen had "stepped down as CEO and Chairman," effective immediately. The Press Release did not disclose that Pedersen was resigning because of margin calls. Later the same day, Defendant Pedersen filed a Form 4 with the SEC disclosing that he had sold stock on August 14, 2012 to meet margin calls.

55.     On Monday, August 20, 2012, an analyst at Roth Capital disclosed in an analyst note that Defendant Pedersen stepped down as the Company's CEO and Chairman after selling 515,000 shares of Zagg common stock on August 14, 2012, at a price range of between $8.10 and $8.43, to meet margin calls, according to the Form 4 filed with the SEC by Defendant Pedersen. Pedersen collected approximately $4.2 million in gross proceeds from the August 14 sale.

56.     On this news, Zagg stock declined $1.12 per share or over 13%, to close at $7.30 per share on August 20, 2012.

57.     On August 28, 2012, Pedersen filed a Form 4 with the SEC reporting that on August 24, 2012, Pedersen sold another 1.25 million shares to satisfy all of his remaining margin obligations. Defendant Pedersen collected approximately $8.6 million in gross proceeds from the August 24 sale.

58.     On August 28, 2012, the Company held a conference call to discuss "recent events." During the call, Defendant Hales finally set the record straight regarding Pedersen's resignation and confirmed that Pedersen left his position in the Company because of the margin calls. Moreover, during the conference call, the Company admitted that Pederson's departure had been anticipated since December due to the margin calls, and that Defendant Hales, who had been retained as the Company's President and COO on December 12, 2011, had been in charge of Zagg's "day to day operations" well before Pederson's resignation.

> <Question> The first question surrounds [Pedersen]'s departure, was it purely a result of the margin calls or is there something else going on?

> <Defendant Hales> No, his departure was entirely related to the margin call situation that started last December and unfortunately surfaced again two weeks ago.

***

> Robert and I have enjoyed an excellent working relationship since I joined the team last December as President and COO. Prior to joining the executive team, I worked closely with Robert as a Member of the board of the Directors. Immediately after joining the company, Robert and I began working with the ZAGG leadership team to identify and establish corporate objectives that would serve to guide the company and all employees for the foreseeable future.

> Once those objectives were established, Robert handed much of the responsibilities for the day-to-day operations over to me. And since that time, I

17

have worked with our employees, customers, vendors and suppliers to communicate and implement those objectives.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

59.     At all relevant times, the market for Zagg common stock was an efficient  market for the following reasons, among others:

a.     Zagg's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b.     Zagg regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

c.     Zagg was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

d.     Numerous NASD member firms were active market-makers in Zagg stock at all times during the Class Period; and

e.     Unexpected material news about Zagg was rapidly reflected and incorporated into the Company's stock price during the Class Period.

60.     As a result of the foregoing, the market for Zagg's common stock promptly digested current information regarding Zagg from all publicly available sources and reflected such information in Zagg's stock price.  Under these circumstances, all purchasers of Zagg's common stock during the Class Period suffered similar injury through their purchase of Zagg's common stock at artificially inflated prices, and a presumption of reliance applies.

### ECONOMIC LOSS/LOSS CASUATION

61.     The market for Zagg's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Zagg's securities traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired Zagg's common stock relying upon the integrity of the market price of Zagg's securities and market information relating to Zagg, and have been damaged thereby.

62.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Zagg's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

63.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class. As described herein, during the

Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Zagg's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Zagg and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

64.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Zagg, their control over, and/or receipt and/or modification of Zagg's allegedly materially misleading misstatements and/or their associations with the Company, which made them privy to confidential proprietary information concerning Zagg, participated in the fraudulent scheme alleged herein.

65.     Defendants were further motivated to engage in this course of conduct in order to allow Defendant Pedersen to sell 515,000 shares of their personally-held Zagg common stock for gross proceeds of approximately $4.2 million.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

66.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

67.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (2) cause Plaintiffs and other members of the Class to purchase Zagg's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

68.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Zagg's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as

primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

69.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Zagg as specified herein.

70.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Zagg's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Zagg and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Zagg's securities during the Class Period.

71.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (a) the Individual Defendants were high-level executives,  directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (b) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to

and participated in the creation, development and reporting of the Company=s financial condition; (c) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (d) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

72.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Zagg's operating condition and business from the investing public and supporting the artificially inflated price of its securities.   As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

73.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Zagg's securities was artificially inflated during the Class Period.   In ignorance of the fact that market prices of Zagg's

publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired Zagg securities during the Class Period at artificially high prices and were or will be damaged thereby.

74.     At the time of said misrepresentations and omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding Zagg's business and operating condition, which was not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their Zagg securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

75.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

76.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

77.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**SECOND CLAIM**
**Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**
**Against Director Defendants and Zagg**

78.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79.     During the Relevant Period, the Director Defendants caused Zagg to disseminate the false and misleading Proxy specified above, which failed to disclose material facts regarding Defendant Pedersen's pledges of Zagg stock that would have made the statements in the Proxy, in light of the circumstances under which they were made, not misleading. As set forth above, this information was required to be disclosed by Item 403(b) of Regulation S-K. Also as set forth above, the Proxy omitted to state material facts necessary to make the statements in the proxy not misleading, in violation of Regulation 14a-9.

80.     The Proxy was reviewed and/or disseminated by the Director Defendants. It misrepresented and/or omitted material facts, including material information concerning Defendant Pedersen's pledges of Zagg stock. By virtue of their positions within the Company, as well as their personal knowledge of Defendant Pedersen's pledges of Zagg stock, the Director Defendants were aware of this information and of their duty to disclose this information in the Proxy.

81.     The Director Defendants were at least negligent in filing the Proxy with the above-noted materially false and/or misleading statements.

82.     The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would have considered them important in deciding how to vote on

25

the various matters set forth in the Proxy for shareholder action. In addition, a reasonable shareholder would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy.

83.     By reason of the foregoing, the Director Defendants violated section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

### THIRD CLAIM
**Violation of Section 20(a) of The Exchange Act Against the Individual Defendants and
Director Defendants**

84.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

85.     The Individual and Director Defendants acted as controlling persons of Zagg within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiffs contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

86.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

87.     As set forth above, Zagg and the Individual and Director Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

88.     By virtue of their positions as controlling persons, the Individual and Director Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

89.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

(a)  Determining that this action is a proper class action, certifying Plaintiffs as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Class Counsel;

(b)  Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

27

(c)    Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)  Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: September 10, 2012

                        HATCH, JAMES & DODGE

By:     /s/ Mark F. James_____
         Mark F. James
         Mitchell A. Stephens

         Phillip Kim, Esq.  (PK 9384)
           pkim@rosenlegal.com
         Laurence Rosen, Esq. (LR 5733)
           lrosen@rosenlegal.com
         **THE ROSEN LAW FIRM, P.A.**
         275 Madison Avenue, 34th Floor
         New York, NY  10016
         Phone: (212) 686-1060
         Fax: (212) 202-3827
         Email: pkim@rosenlegal.com
         Email: lrosen@rosenlegal.com

         **Attorneys for Plaintiff and the Proposed Class**